UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CLARENCE W. SHEWARD, ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | No. 3:08-CV-428 |
| ) | (Phillips) |
| BECHTEL JACOBS COMPANY LLC ) | |
| PENSION PLAN FOR GRANDFATHERED ) | |
| EMPLOYEES, ) | |
|     Defendants/Counter-Plaintiff ) | |
| And ) | |
| BECHTEL JACOBS COMPANY LLC, ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

This civil action is before the court on the parties' cross-motions for summary judgment. In plaintiff Clarence Sheward's motion for summary judgment, he argues that defendants breached their fiduciary duty in calculating his pension amount, and are thus precluded under both law and equity from recouping overpayments made to him under defendants' retirement pension plan. Sheward seeks an order that defendants cannot recoup overpayments made to him and asks the court to stop defendants from continuing to deduct such overpayments from his monthly pension benefits. In their motion for summary judgment, defendants Bechtel Jacobs Company LLC Pension Plan for Grandfathered Employees and Bechtel Jacobs Company LLC (BJC), argue that the language of the pension plan at issue in this case, along with the law of ERISA, and the common law, entitle them to recoup overpayments made to Sheward and that doing so

does not have an inequitable impact on him. In addition, BJC submits that it is entitled to summary judgment in its favor with regard to its counterclaim seeking payment from Sheward in the amount of $114,370.05, less amounts recouped since May 1, 2008, plus interest, representing the overpayment of retirement benefits to Sheward from February 2003 through April 2007. For the reasons which follow, Sheward's motion for summary judgment will be denied, and BJC's motion for summary judgment will be granted.

I. Factual Background

Lockheed Martin, the United States Enrichment Corporation (USEC), and BJC are contractors for the federal government. Pursuant to their contracts with the federal government, each contractor is reimbursed by the federal government for funding of their various pension plans. Many times an individual will work for more than one federal contractor, and therefore, be eligible for retirement benefits from more than one retirement plan. In such a case, to limit the total amount of pension expenses, each contractor is required to offset the pension payments under its retirement plan for payments due that individual under another contractor's retirement plan. In other words, the federal government does not want to pay a participant twice for the same years of service.

Sheward retired from Lockheed Martin Utility Systems on August 1, 1998 and began receiving a monthly pension benefit from the Retirement Program Plan for Employees of the United States Enrichment Corporation (USEC Plan). Thereafter, Sheward was hired by BJC on September 21, 1998 as a project manager (part-time position). On June 7, 1999, Sheward accepted full-time employment as a general

superintendent. When Sheward began participating in the BJC Plan in June 1999, he was already receiving retirement benefits from the USEC Plan. However, due to an administrative error, the USEC Plan erroneously discontinued pension payments to Sheward at that time.

In October 2002, Sheward began the process of preparing for retirement from BJC. According to Sheward, someone from the BJC retirement benefits group sent him a packet of information and forms explaining the different options for retirement. Sheward spoke to this BJC employee regarding his retirement options several times. After considering all of the options and preparing models to determine which one was best for him, Sheward chose the "level income" form of payment on December 1, 2002. With the level income option and the 50% surviving spouse option, Sheward estimated his pension would be approximately $3,250.00 per month. In a Notice of Retirement Status from BJC dated February 4, 2003, the monthly life annuity was set at $3,261.05 as the pension benefit due Sheward. Unfortunately, the BJC employee who calculated Sheward's pension benefit failed to offset his benefit payable from the USEC Plan. Sheward stated that he relied upon and trusted the information of the BJC employee in making his decision to retire from BJC in 2003.

Approximately four years later, BJC discovered that it had not properly offset Sheward's Lockheed-Martin pension benefit (USEC Plan). On April 9, 2007, Sheward was advised that there had been a miscalculation in his pension benefit. Sheward was informed that the amount that he had been receiving for his pension was incorrect because it did not

3

take into account the benefits that were payable to him under the USEC Plan, and he was advised that BJC was going to reduce his monthly pension to $1,289.50. BJC further advised Sheward that he owed BJC a total of $114,371.05 for the overpayments plus interest at 6%.

At about this same time, the USEC Plan discovered its mistake in stopping Sheward's benefit payments and agreed to make a lump sum payment to him in the account of $224,515.94, representing missed payments from June 1999 through April 2007, plus interest. In May 2007, Sheward received a lump sum payment of retirement benefits from the USEC Plan in the amount of $224,515.94, and the USEC Plan resumed making monthly pension payments in the amount of $1,153.24. BJC suggested to Sheward that he repay the $114,371.05 overpayment out of the $224,515.94 lump sum payment received from the USEC Plan. Sheward did not do so. BJC argues Sheward was paid twice for the pension benefits he was owed under the terms of the USEC Plan from February 2003 through April 2007 – once when he received incorrectly inflated pension benefits from the BJC plan because the plan did not offset his USEC pension and again when he received the lump sum reimbursement from the USEC Plan.

On April 21, 2007, Sheward notified BJC that he disputed BJC's claim of overpayment and the recalculation and reduction of his monthly pension benefit. BJC responded on May 29, 2007, by notifying Sheward that his letter would be considered a claim for benefits and that his claim was being denied. In February 2008, after being unable to reach an agreement with Sheward on a structured repayment of the overpayment

4

amount, Sheward's monthly pension benefits from BJC were reduced $700 to recover the overpayment. Sheward appealed the decision. On April 15, 2008, BJC advised Sheward that it had completed the internal appeal process and denied his appeal. The instant action was filed on October 23, 2008.

## II. BJC's Motion to Strike Sheward's Affidavit

Sheward has filed an Affidavit in support of his motion for summary judgment which contains statements regarding alleged representations made by employees of BJC. BJC has moved to strike the Affidavit. In the alternative, BJC requests leave to file the Affidavit of Kelli Schifferer as supplemental evidence to the Administrative Record. In support of the motion, BJC states that a review of the Administrative Record indicates that none of the individuals named in Sheward's affidavit were involved in the benefit determination. Further, BJC contends that certain testimony in Sheward's Affidavit should be stricken as inadmissible hearsay. Sheward offers these statements as evidence that he received certain assurances from employees of BJC regarding his pension status and the statements are thus relevant to his claim that BJC breached its fiduciary duty to provide accurate pension benefit information to him.

Under Rule 56(e), Federal Rules of Civil Procedure, a witness' affidavit offered in support of or in opposition to a motion for summary judgment, must set forth "facts that would be admissible in evidence." BJC argues that the statements in plaintiff's Affidavit are inadmissible hearsay and should be stricken from the record. The court disagrees. Hearsay is defined as an out-of-court statement "offered in evidence to prove

5

the truth of the matter asserted." Fed.R.Evid. 801(c). Here, the statements regarding benefit calculations by a BJC employee are offered not to establish the truth of the matter asserted (the parties agree that the statements were inaccurate), but instead are offered to show their effect on Sheward as he considered his retirement options with BJC. Thus, the statements are not hearsay, and are admissible as nonhearsay testimony. *See United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). Accordingly, BJC's motion to strike [Doc. 15] is **DENIED** to the extent it seeks to strike Sheward's Affidavit; the motion is **GRANTED** to the extent that defendants will be allowed to file the Affidavit of Kelli Schifferer as supplemental evidence to the Administrative Record. The court will next address the motions for summary judgment filed by the parties.

### III. The Parties' Motions for Summary Judgment

Sheward has moved for summary judgment on the grounds that (1) BJC breached its fiduciary duties through the benefit calculation, thus, BJC's unilateral recoupment is inequitable; (2) BJC is equitably estopped from claiming recoupment; and (3) BJC is claiming inequitable interest on the alleged overpayments and inequitably failing to consider plaintiff's expenses incurred in responding to the overpayment allegations.

BJC has moved for summary judgment on its counterclaim on the grounds that (1) BJC did not breach any fiduciary duty owed to Sheward, and (2) BJC is bound by the terms of the BJC Plan and ERISA to seek recoupment of the overpayment. Thus, BJC's decision to recalculate Sheward's pension and reduce his monthly pension amount

6

to recoup the overpayment is not arbitrary and capricious, and BJC is entitled to judgment on its counterclaim as a matter of law.

A. Standard of Review

Summary judgment is appropriate where it can be shown that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 317 (1986). The moving party has the initial burden of showing the absence of a general issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Once this burden is satisfied, the burden then shifts to the nonmoving party to show that a genuine and material factual dispute exists. This dispute must be shown through specific facts and not legal conclusions. Additionally, the nonmoving party may not rely on allegations or denials contained in the pleadings to satisfy this burden but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324.

Only factual disputes which are both genuine and material will preclude the entry of summary judgment. The standard for summary judgment mirrors the standard for directed verdict:

> If the defendant in a . . . civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 252.

In *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 617 (6th Cir. 1998), the Sixth Circuit established a district court's standard of review in ERISA matters. Under *Wilkins*, this court has two possible standards of review. If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the plan, the court is required to undertake a *de novo* review of the administrator's decision. *Id.* at 613. On the other hand, where a benefits plan vests discretion with the administrators, the court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious. *Id.* The parties agree that the decision by BJC to recoup the overpayments is subject to review under the arbitrary and capricious standard.

Thus, the issue now before the court is whether BJC's decision to collect overpayments mistakenly made to Sheward was arbitrary and capricious based upon the record in this case. "This standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian*, 152 F.3d at 520. Applying this standard of review requires that the plan administrator's "decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). If the decision was arbitrary,

8

capricious, not supported by substantial evidence, or contrary to law, the decision will be overturned. *Daniel v. Eaton Corp.,* 839 F.2d 263, 267 (6th Cir. 1988).

B. Breach of Fiduciary Duty

Sheward alleges that BJC breached its fiduciary duty by "erroneously and negligently miscalculating his pension benefits" and asks the court for a "declaration that BJC has breached its fiduciary duties. . . ." 29 U.S.C. § 1132(a)(3) provides that a participant, beneficiary or fiduciary may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, Sheward must show that BJC was (1) acting in a fiduciary capacity when it made the challenged representations, (2) that the representations constituted material misrepresentations, and (3) that Sheward relied on the misrepresentations to his detriment. *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir. 2002).

> 29 U.S.C. § 1002(21)(A) defines a "fiduciary" as follows:
> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . .

9

A fiduciary within the meaning of ERISA "must be someone acting in the capacity of manager, administrator, or financial adviser to a plan." *Sentara Va. Beach Gen. Hosp. v. LeBeau,* 182 F.Supp.2d 518, 523 (E.D.Va. 2002). Performing administrative or ministerial acts such as answering employees' inquiries or processing claim forms does not amount to discretionary functions which would qualify a person as a fiduciary under ERISA. *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 455 (6th Cir. 1991) (court held claims processor who had only the power to pay out benefits in accordance with the plan document was not an ERISA fiduciary). A Department of Labor interpretive bulletin further explains that a person without the power to make plan policies or interpretations but who performs purely ministerial functions, such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits, is not a fiduciary under ERISA. 29 C.F.R. § 2509.75-8, D-2.

Sheward argues that an unidentified person at BJC estimated his pension benefit and advised him of the amount he could expect to receive. Based upon the estimate that he would receive a monthly pension in the amount of $3,250, he made his long-term retirement plans. BJC argues that the pension calculations provided to Sheward in 2003 regarding the amount of his pension were based on a miscalculation made by an employee of BJC performing a ministerial function, not a fiduciary function. The court agrees. Under the Department of Labor guidance cited above and the standard set forth in *Baxter*, the employee of BJC who calculated Sheward's pension amount and communicated it to him was not acting as a fiduciary of the plan. The mere fact that an error occurred in the calculation of Sheward's benefits is not, in itself, a sufficient basis to

support a claim for breach of fiduciary duty. *See Johnson v. Retirement Program Plan for Employees of Certain Employers at the U.S. Dept of Energy Facilities at Oak Ridge, Tennessee*, 2007 WL 649280 (E.D.Tenn. Feb. 27, 2007).

Nor can Sheward show that he relied on the alleged misrepresentation to his detriment. Sheward argues that he planned on using the funds for his retirement farm and daily living expenses, and he used the funds in that manner for the four years that BJC neglected to discover its mistake. However, the undisputed facts show that Sheward has suffered no detriment, and in fact, has received a windfall. From February 2003 through April 2007, Sheward received monthly benefits from the BJC Plan of $3,261.05. These monthly payments should have been offset by the benefits Sheward was due from the USEC Plan. When the miscalculation was discovered, BJC reduced Sheward's benefit payments to the correct amount, taking into consideration the monthly payments he was receiving from the USEC Plan beginning in May 2007. In addition, Sheward received a lump sum payment in excess of $224,000 from the USEC Plan to make up for its missed payments from June 1999 through April 2007. Thus, Sheward received a windfall in the form of double payment of his USEC Plan benefits from February 2003 through April 2007. Sheward's argument that he relied on the representations of his pension amount to his detriment cannot be reconciled with the fact that he received pension benefits as required under the terms of the BJC Plan and the USEC plan, and in fact, received part of that benefit twice. Therefore, the court finds that the representations made to Sheward regarding his pension were not made by a fiduciary and that he did not rely on these

11

representations to his detriment. Accordingly, his claim for breach of fiduciary duty by BJC fails as a matter of law.

C. BJS's Decision to Recoup Overpayments

An ERISA fiduciary has "the power and corresponding duty to act in the interests of the plan's beneficiaries, that is, to take necessary and appropriate action with respect to the required contributions and missing repayments." *Best v. Cyrus*, 310 F.3d 932, 935 (6th Cir. 2002). In *Best,* the Sixth Circuit found that the plan fiduciary had "a specific duty to secure . . . contributions and repayments because ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *Id.* at 936. *See also,* RESTATEMENT (SECOND) OF TRUSTS § 250, which states, "if a trustee has made a payment out of trust property to one of several beneficiaries to which the beneficiary was not entitled, his beneficial interest is subject to a charge for the repayment thereof . . . ." ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Fiduciary duties under ERISA also include those imposed under the common law of trusts. Under the law of trusts, a fiduciary is required "to perform the duties imposed, or exercise the powers conferred, by the trust documents." *Varity Corp. v. Howe,* 516 U.S. 489, 502 (1996).

Here, the BJC Plan Document, specifically Article 15.2, provides BJC with the responsibility to "correct errors." Issuing nearly $125,000 in overpayments to Sheward was a serious error that BJC was required to correct. Failure to correct the error and recover

12

the overpayments would have violated BJC's fiduciary duty to act on behalf of the trust and in the interests of the remaining participants and beneficiaries. Next, the court is directed to weigh the competing interests of the plan beneficiaries at large against the interests of the individual from whom overpayments are sought.

> Whether repayment would be inequitable depends on the beneficiary's disposition of the money which he was overpaid, the amount of the overpayment, the nature of the mistake made by the administrator, the amount of time which has passed since the overpayment was made, and the beneficiary's total income and effect recoupment would have on that income.

*Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1251 (6th Cir. 1992).

In *Johnson v. Retirement Program Plan for Employees of Certain Employers at the U.S. Dept of Energy Facilities at Oak Ridge, Tennessee*, 2007 WL 649280 (E.D.Tenn. Feb. 27, 2007, Judge Thomas A. Varlan of this court faced a similar set of facts as presented here. The plaintiff in Johnson received overpayments totaling approximately $10,000 over a ten year period. The calculation of plaintiff's pension payments did not take into account a qualified domestic relation order that awarded plaintiff's ex-wife a portion of his retirement benefit. Upon discovering the overpayment, the employer reduced the plaintiff's pension payment to the correct amount and began withholding $500 per month to recoup the overpayment. The plaintiff alleged that he spent the overpayment on living expenses during retirement and stated that his pension benefit was approximately 26% of his total income and over half of his disposable income. Judge Varlan found the detrimental financial impact on the plaintiff would not be inequitable and that the "language of the Plan and the applicable common law and ERISA case law supported the conclusion

that defendant's decision to collect the overpayments was not arbitrary and capricious." *Id.* at *8. I find the same result should apply here. As in *Johnson*, Sheward has not shown that the recoupment of the overpayment would detrimentally impact his finances. Sheward argues that he used the overpayments "to pay for his day to day expenses and to fund his retirement farm in its daily operations." In addition, Sheward states that he needs the funds "to pay for hay, equipment, feed, fertilizer and other expenses."

However, Sheward ignores the fact that he actually received a double payment of his pension from the USEC Plan for the period of February 2003 through April 2007. He first received these payments as part of his pension payments from the BJC Plan from February 2003 through April 2007. This amount was again paid to him as part of the approximately $224,000 lump sum payment he received from the USEC Plan in early 2007, representing payments that he should have received from the USEC Plan from July 1999 through April 2007. It is disingenuous for Sheward to argue that it would be inequitable to require him to repay the overpayment when he was paid twice. The undisputed facts show that shortly after learning that BJC intended to seek recoupment of the overpayment, Sheward received his lump sum payment from the USEC Plan. Despite having available to him sufficient funds to repay the overpayment to the Plan and have over $100,000 left over, he did not do so. Over the next year, BJC attempted to work out a structured repayment schedule with Sheward but was unable to do so. In February 2008, Sheward's monthly benefits from the BJC Plan were reduced $700 to recoup the overpayment. Further, the USEC Plan resumed making benefit payments to Sheward on May 1, 2007, in the amount of $1,153.24 per month. Based upon the Plan documents, the applicable

14

case law, and the undisputed facts, the court finds that the decision by BJC to recoup the overpayments made to Sheward was reasonable and supported by substantial evidence.

D. Equitable Estoppel

Sheward next argues that BJC should be equitably estopped from recouping the overpayment by citing Tennessee case law on the elements of equitable estoppel. However, Tennessee law does not apply in this case because it is preempted by ERISA. *See FMC Corp. v. Holiday*, 498 U.S. 52, 53 (1990); *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445 (6th Cir. 1993). Therefore, the court must look to the elements of an equitable estoppel claim under ERISA to determine whether Sheward has met his burden. To establish a claim for equitable estoppel under ERISA, Sheward must show the following:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Tregoing v. American Community Mut. Ins.,* 12 F.3d 79, 83 (6th Cir. 1993) (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). In *Johnson,* Judge Varlan held that the employer's lack of awareness that the payments made to the plaintiff were in error, precluded the plaintiff from establishing an element of his equitable estoppel claim. The undersigned agrees with Judge Varlan's reasoning and finds that the undisputed facts show that BJC did not have knowledge that Sheward's pension calculation was incorrect at the time of the representation to him. In addition, Sheward is unable to

show that he will suffer an inequitable hardship if BJC is allowed to recoup the overpayment. Accordingly, Sheward's equitable estoppel claim fails as a matter of law.

E. Offset for Taxes and Expenses

Last, Sheward alleges that BJC's failure to consider and offset state and federal taxes withheld as well as his expenses incurred in having to address the recoupment issue amounts to arbitrary and capricious conduct. I find Sheward's offset argument without merit.

As stated above, Sheward received a lump sum payment from the USEC Plan in the amount of $224,515.94 and began receiving monthly benefit payments from the USEC Plan in the amount of $1,153.24 in May of 2007. Sheward cannot maintain a hardship argument under these facts. In addition, Sheward may file an amended tax return seeking a tax credit for the taxes withheld from the overpayments.

F. BJC's Counterclaim

BJC has filed a counterclaim against Sheward seeking an award of a lump sum payment of $114,370.05, less amounts recouped from Sheward since May 1, 2008, plus interest. For the reasons stated above, I find that BJC is entitled to judgment as a matter of law on its counterclaim for the overpayments made to Sheward.

**IV. Conclusion**

For the reasons stated above, the plaintiff's motion for summary judgment [Doc. 13] is **DENIED** in its entirety, and the defendants' motion for summary judgment

[Doc. 14 is **GRANTED**, whereby BJC is awarded judgment against Sheward in the sum of $114,370.05, less amounts recouped from Sheward from May 1, 2008, plus interest.

In addition, defendants' motion to strike [Doc. 15] is **DENIED** in part and **GRANTED** in part as set out above.

**ENTER:**

s/Thomas W. Phillips
**Thomas W. Phillips**
**UNITED STATES DISTRICT JUDGE**